Bissell, J.,
delivered the opinion of the court.
The matters in issue between these parties narrow the inquiry to a single question. An epitome of the facts will make the elements of the investigation exceedingly plain. In May, 1888, the firm of Beers & Lee, composed of H. M. Beers and Albert Lee, were residents of the state of Kansas. At that date they sold to Berwick & Beers, who were domiciled in the same state, a lot of personal property on condition that the title should not vest in the vendees, except upon payment of certain promissory notes which were executed for the purchase price and delivered to the vendors at the time of the sale. The notes contained the condition. The property was then in the possession of the vendors at the place of the contract and was immediately turned over to the vendees, who brought it into this state. There is no averment in the complaint concerning the consent of Beers & Lee to the removal. It appears, however, that prior to the maturity of the paper, one of the firm came to Colorado in pursuit of the property, took it into his possession, and started back to Kansas with it. This he had a right to do by the terms of the agreement. While on the journey he was intercepted by the sheriff of Elbert county, who seized the stuff under a writ of attachment issued in a suit brought by some creditors of Berwick & Beers to recover a claim against them. There is no question made concerning the regularity of those proceedings. The present suit was brought against the sheriff to recover for the taking and conversion. The sheriff justified by a plea of the judicial proceedings in which the writ issued. A demurrer to the answer was sustained, and the case was brought to the supreme court by appeal, and subsequently under the statute *179 transferred to this court. It is conceded that by the law of Kansas the transaction was a valid one, and that Beers '& Lee, by virtue of their agreement, were not divested of their title to the property, and had the right to enforce their claim and take possession of the chattels wherever they might find them. To those familiar with the law of Colorado the question to be settled had been foreshadowed by this statement. The radical difference between the law of the two states in such matters furnishes an apparent basis for the contentions of these parties. The law of Twyne’s Case, (2 Coke’s R., part 3, p. 80,) is the rule in Colorado. Without a compliance with the statute which provides a way in which such liens may be protected, there can be no sale of personal property in this state with a valid reservation of the title and a lien for the benefit of the vendor, when the vendee is permitted to take and retain possession. This doctrine is clearly expressed in George v. Tufts, 5 Colo. 162. This plain principle does not determine the rights of these parties. They entered into a contract which was entirely valid and binding both inter partes and as against third persons. Evidently the only question is, whether this contract, valid where made, is enforcible in a state by whose laws it would be invalid if the contract had been entered into within its jurisdiction.
There is considerable apparent diversity of opinion among learned courts on this inquiry. The differences, however, are inore apparent than real. In general it may be said, that wherever there is any apparent contradiction in the adjudications it comes from a difference with respect to some one of the different elements in the propositions of fact, which are generally deemed ample when they all exist, to permit the enforcement of the contract. It is always essential to ascertain the domicile of the parties, the lex loci contractus, and the situs of the property. Wherever these unite to sustain the validity of .the contract, it may be safely asserted that it is enforcible in the courts of every state where a controversy arises over the title to the property. *180 These elements are present in this suit. All the parties to the contract lived in Kansas. By the law of the place of the contract the agreement was a valid one against everybody. The property was within the limits of that jurisdiction when the contract was made. According to the weight of authority the removal of the property into another state, whether with or without the consent of the contracting parties, will not invalidate a contract enforcible when and where it was entered into. A multitude of authorities can be cited upon this question, but we shall content ourselves with the citation of a few well considered decisions in which the doctrine has been announced. Mumford v. Canty, 50 Ill. 370 ; Ferguson v. Clifford, 37 N. H. 86 ; Kanaga v. Taylor, 7 Ohio State 134; Cobb v. Buswell, 37 Vt. 337 ; Smith & Co. v. McLean, 24 Ia. 322; Born et al. v. Shaw, 29 Pa. State 288 ; Crapo v. Kelley, 16 Wall. 610; Thuret et al. v. Jenkins et al., 7 Martin, 318.
It would not be profitable to discuss the reason of the rule, nor to- determine whether it ought to be put on the recognized comity existing between the different sovereign-ties, or on the well settled principle of the lex loci contractus, which permits the enforcement of a contract according to the established law of the place, so long as it does not contravene the recognized policy of the state of the forum. Both principles are frequently invoked. According to the Mumford case, the contract will not be deemed to be opposed to the policy of the state unless based upon immoral or criminal considerations. In either case and upon either ground the contract may be upheld.
The judgment of the trial court was assailed because the judge based his decision upon the fact that the vendors were in possession of the property at the time it was seized under the writ. It is contended that this is an erroneous basis upon which to rest the judgment, and that it contravenes the well considered case of Wilson v. Voight, 9 Colo. 614. It was there decided that a mortgage on property situate in the state, executed between parties who lived here, could not be made a *181 valid lien as against attaching creditors by any act of the mortgagee in assuming possession before the levy of the writ. The court adjudged an instrument of that sort absolutely invalid under the law, and very properly held that the rights of the parties could not be aided by any subsequent act concerning the possession, where it was assumed under the contract itself, and there had been no delivery of the property in payment of the debt, or in execution of a new and valid contract. No such question is involved here. According to the conditions of an absolutely valid contract the vendor took possession of the property. This he could rightfully do, and it might well be held, regardless of the question of policy, that no subsequent levy should be permitted to disturb a title which had thus become united with the possession. If it was considered that the policy of this state as expressed by its statutes would, under some circumstances, protect the rights of subsequent execution creditors, the rule would not be deemed applicable under these circumstances.
The case presents no other questions, and since the judgment of the court below is in harmony with the law herein laid down, it must be affirmed.

Affirmed.