*William H. Keller,* with him *M. G. Schaeffer* and *John A. Coyle,* for appellee.

PER CURIAM, July 17, 1918:

The correct conclusion of the learned court below was that the appellant had shown nothing which justified her in appropriating the proceeds of the sale of the College avenue property to the payment of indebtedness on the Marshall street properties, and her appeal from the surcharge is dismissed, at her costs.

---

## Coulter, Appellant, *v.* Line, Executor.

*Judgments — Presumption of payment — Lapse of twenty-one years—Absence of demand—Act of April 27, 1855, P. L. 368—Judgment for defendant n. o. v.*

1. Under the Act of April 27, 1855, P. L. 368, Section 7, if a person claiming payment of a charge or lien on real estate is unable to show either a claim or demand for payment made by him on the owner of such real estate, or a payment upon or acknowledgment of the existence of such lien or charge by such owner within twenty-one years, the act operates to raise a conclusive presumption of the release or extinguishment of the demand and declares that it shall thereafter be irrecoverable.

2. Judgment was entered in 1878 against a husband by a trustee upon a separate use for defendant's wife. The judgment was duly revived in 1883 and 1888. In 1892 the wife died, naming the defendant the executor of her will, but he never filed an inventory or account. In 1902 the legal plaintiff died and no trustee was appointed to succeed him until 1916. In 1915 defendant died. There was no evidence of demand by the plaintiff or acknowledgment by defendant at any time. The jury found a verdict for the plaintiff; the court subsequently entered judgment for defendant n. o. v. *Held,* there was a conclusive presumption of payment, unaffected by the failure of defendant to have a trustee appointed after the death of the original trustee, and judgment was properly entered for defendant n. o. v.

Argued June 11, 1918. Appeal, No. 341, Jan. T., 1917, by plaintiff, from judgment of C. P. Lancaster Co., May T., 1916, No. 35, entered for defendant non obstante

veredicto in case of William J. Coulter, successor to John Line in trust for the separate use of Eliza Rissler who was the wife of Jacob B. Rissler, now deceased, of whom Wm. J. Coulter is administrator, d. b. n. c. t. a., v. Theodore Line, Executor of Jacob B. Rissler, deceased. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ.    Affirmed.

Scire facias sur judgment.

The facts appear from the following opinion by LANDIS, P. J., sur defendant's motion for judgment n. o. v.:

On March 25, 1878, there was entered in this court to January Term, 1878, No. 604, a judgment bond, in which John Line, in trust for the separate use of Eliza Rissler, wife of Jacob B. Rissler, was the plaintiff, and Jacob B. Rissler, of Ephrata Township, was the defendant. The judgment was dated March 16, 1878, was given to secure the sum of $1,900, and was made payable on April 1, 1879, with interest. On March 23, 1883, the judgment was revived by an amicable scire facias, entered to January Term, 1883, No. 522; and on May 28, 1888, it was, in a similar way, revived by an amicable scire facias, entered to April Term, 1888, No. 457. No other proceedings were had concerning it, until the present scire facias was sued out.

On May 22, 1892, Eliza Rissler died, leaving a last will and testament, in which her husband, Jacob B. Rissler, was named as executor. No inventory nor account was ever filed by him in his wife's estate. Under this will, after certain small specific legacies, the balance of the estate was given to him during his natural life. On January 5, 1902, John Line, the trustee named in the judgment, died, and no trustee was appointed to succeed him, until some time in 1916. On May 14, 1915, Jacob B. Rissler died, and shortly thereafter William J. Coulter was appointed administrator d. b. n. c. t. a. of Elizabeth (Eliza) Rissler, deceased, and he was also appointed trustee in the judgment in place of the said John

Line, deceased. Under these admitted facts, a verdict was directed by the court in favor of the plaintiff for the sum of $4,750.00, and a rule was then granted for judgment for the defendant non obstante veredicto, on a point reserved, which raised the question whether the presumption of payment was a bar to the action.

In Coleman v. Erie Trust Company, 255 Pa. 63, it was held that "the presumption arising from lapse of time that a judgment has been paid is not conclusive, but is merely a presumption of fact which is rebuttable. The presumption does not arise where there is affirmative proof that the debt has not been paid, or where there are circumstances that sufficiently account for the delay of the creditors." But section 7 of the Act of April 27, 1855, P. L. 368, provides that, "in all cases where no payment, claim or demand shall have been made on account of or for any ground rent, annuity or other charge upon real estate for twenty-one years, or no declaration or acknowledgment of the existence thereof shall have been made within that period by the owner of the premises, subject to such ground rent, annuity or charge, a release or extinguishment thereof shall be presumed, and such ground rent, annuity or charge shall thereafter be irrecoverable." It was, therefore, said, in Stephenson's Est., 256 Pa. 487, that it is not necessary to plead the Act of 1855, and that, to remove the bar of that act, demand must be made of, or acknowledgment by, all the owners sought to be affected thereby. In Wingett's App., 122 Pa. 486, the court held that "it is very clear, therefore, that, if the person claiming payment of such charge or lien is able to show neither a claim or demand of payment made by him on the owner of such real estate, nor a payment upon or an acknowledgment of the existence of such lien or charge by such owner within the statutory period, then the act operates to raise a conclusive presumption of the release or extinguishment of the demand, and declares that it shall 'thereafter be irrecoverable.'"

In the recent case of Yocum's Est., 242 Pa. 82, the question raised in this proceeding seems to have been determined by the Supreme Court. If there appeared, that, on June 2, 1875, Jesse Yocum executed his bond, with a warrant of attorney attached, for $2,000, payable one year after date, to Stephen Coates, as trustee for his wife, Ann Yocum. Jesse Yocum died on October 10, 1896, devising his farm to his wife for life, with the privilege of borrowing on it to a limited amount for certain purposes. Mrs. Yocum resided on the property until May 31, 1911, the time of her decease. A claim upon the bond was presented against Jesse Yocum's estate, but was disallowed in the court below, first, upon the ground that the bond was no lien upon the land, and, second, because a presumption had arisen "from facts and circumstances inconsistent with the idea that the debt had not been cancelled." The Supreme Court disagreed with the court below as to the second reason given, but affirmed the judgment, deciding broadly that, "where a wife has loaned money to her husband who has given a bond to a trustee to secure the repayment of such money, under the Act of April 15, 1851, P. L. 669, the transaction assumes the form of a contract, equally binding on both parties, and is, like other contracts, subject to the statute of limitations and the presumption of payment," and that, where "such a bond, which has been due more than twenty years, is presented against the estate of a husband by the executor of the wife's estate, the presumption of payment applies, and, in the absence of evidence to rebut it, the claim will be disallowed." Mr. Chief Justice BROWN, in delivering the opinion of the court, said: "If a loan made by a married woman, in the way in which Mrs. Yocum lent her money to her husband, 'assumes the form of a contract,' as it certainly does, and 'is binding equally on both parties,' as it surely is by the express words of the act, why is it not subject, like other contracts, to the statute of limitations and the presumption of payment? Yocum did not contract di-

rectly with his wife, but with a third person as trustee for her, and the bond given to the trustee was 'as good and valid in law' against the obligor's estate 'as though the investment had been made by a trustee appointed by the court.' If these words of the Act of 1851 mean anything, it is that a trustee named in an obligation given by a husband can enforce payment upon its maturity, for such would be the unquestioned right if the wife's money should be invested by a trustee appointed by the court. That there was a right in Coates as trustee to collect the bond by an action at law, if it had not contained a warrant of attorney for the confession of judgment, is recognized in Galt v. Smith, 145 Pa. 167, where the action was by a trustee named in a bond, the condition of which was that the husband should pay interest on a certain sum to his wife annually during her life. In the present case, nothing was to be paid directly to Mrs. Yocum, but the entire sum of $2,000, with interest, was payable to Coates, trustee, one year after the date of the bond. With the right in the trustee to enforce payment of the bond by proceedings at law, there was a corresponding right at law in Yocum to make defense to it, and whatever defense he might have made while living is now open to his legatees: Hoch's App., 21 Pa. 280; Ritter's App., 23 Pa. 95. When Yocum died, a presumption of payment of the bond had arisen. Time had written a receipt across its face, and with no evidence to rebut this, the court below should have declared it paid in the eye of the law. The failure to do so was a failure to give effect to the manifest intention of the legislature as expressed in the Act of 1851—that the loan of the wife's money to Yocum, through Coates as trustee, had assumed the form of a contract, enforceable at law by the latter, with a reciprocal right of defense in the former, whether the wife was living or dead when the right to collect accrued."

In this case, there is not a particle of evidence of demand by the creditor or acknowledgment of the debt on

the part of the debtor. The whole matter remained quiescent from May 28, 1888, when the judgment was last revived, until after the death of Jacob B. Rissler, in 1915. It is true that, about five years after the amicable revival, Jacob B. Rissler became the executor of his wife's will; but this fact does not appear to have changed the situation. It is also true that, about fifteen years after Mrs. Rissler's decease, John Line, the trustee, died, and no one was appointed in his place. The omission, however, to take such action does not seem to me, under the authorities, to have taken away from Jacob B. Rissler his right under the law to claim the presumption of payment after the statutory period had passed, and, if this be true, the same principle applies in favor of his legal representatives. I am, therefore, of the opinion that the plaintiff is not entitled to recover in this case.

Verdict for plaintiffs for $4,750; the lower court subsequently entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned,* among others, was in entering judgment for defendant non obstante veredicto.

*B. F. Davis,* for appellant.

*J. E. Malone,* with him *Joseph T. Evans,* for appellee.

Per Curiam, July 17, 1918:
This judgment is affirmed on the opinion of the learned court below making the rule for it absolute.

---

## Penniman et al., Appellants, v. Hoffman et al.

*Equity—Building restrictions—Garage—Residential district—Decree.*

Where in a suit in equity to enjoin defendants from erecting a garage in alleged violation of a building restriction providing that "no......livery stable or other building for offensive occupation